# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

STEVEN BROWN,

          Appellant,

     v.

DEPARTMENT OF JUSTICE,

          Agency.

DOCKET NUMBERS
DE-0752-13-0092-I-3
DE-0752-13-0265-I-2
DE-1221-13-0329-W-2

DATE: January 23, 2015

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Kirby G. Smith, Esquire, Decatur, Georgia, for the appellant.

Natalie Holick, Esquire, Kansas City, Kansas, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1     The appellant has filed a petition for review of the initial decision that sustained his demotion and removal and denied his individual right of action (IRA) appeal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision.

## BACKGROUND

Prior to November 4, 2012, the appellant was employed as a Special Investigative Agent, GS-0006-12, at the Federal Correctional Complex in Florence, Colorado. MSPB Docket No. DE-0752-13-0092-I-1 (0092-I-1), Initial Appeal File (IAF), Tab 5, at 11. By notice dated June 1, 2012, the Deputy Captain proposed to demote the appellant to the position of Correctional Counselor, GL-0007-09, on charges of Unauthorized Release of Information and Unprofessional Conduct. *Id*. at 24-28. Under the first charge, the notice listed 19 instances in which the appellant sent or forwarded emails containing sensitive information regarding staff and inmates to his then-girlfriend, who worked at another location and had no need to know sensitive information concerning the daily operations at the Florence Complex. *Id*. at 24-27. Under the second charge, the notice listed two instances in which the appellant sent his girlfriend emails containing profanity, in violation of agency policy. *Id*. at 27. The appellant submitted a written response to the proposal notice. *Id*. at 18-23.

¶3    On September 30, 2012, the appellant filed a complaint with the Office of Special Counsel (OSC), alleging retaliation for two protected disclosures. MSPB Docket No. DE-1221-13-0329-W-1 (0329-W-1), IAF, Tab 1 at 82-96. First, he alleged that in May 2011, he disclosed to the Warden that he had observed a prison guard taunting a group of Black Muslim inmates about the death of Osama Bin Laden, *id.* at 94, after which the Warden refused to speak to him or allow him to attend any meetings, *id*. at 95. Second, the appellant alleged before OSC that he suffered retaliation for a May 15, 2012 letter[2] to the agency's Office of Internal Affairs and Office of the Inspector General, in which he disclosed that an Associate Warden was abusing his authority by granting unearned awards and promotions to a subordinate employee with whom he was having a sexual relationship. *Id*. at 94; *see id*. at 18-19. The appellant contended that, although the letter was submitted anonymously, management had determined that he was the author and that, as a result, he was reassigned on June 26, 2012, from the Florence U.S. Penitentiary to a less prestigious position elsewhere within the complex. *Id*. at 95.

¶4    On November 1, 2012, the Complex Warden issued a letter informing the appellant of his decision to demote him to Lieutenant, GS-0007-11, effective November 4, 2012. 0092-I-1, IAF, Tab 5 at 14-17. The appellant filed an appeal of his demotion, 0092-I-1, IAF, Tab 1, contending that the action was due to discrimination based on race and color (light-skinned African-American) and was retaliation for the disclosures made in the anonymous letter. *Id*.

¶5    On February 5, 2013, while the demotion appeal was pending, an Associate Warden issued a notice proposing to remove the appellant on charges of Absence without Leave (AWOL) and Failure to Follow Leave Procedures. MSPB Docket No. DE-0752-13-0265-I-1 (0265-I-1), IAF, Tab 1 at 4-6. Under the first charge, the notice specified that the appellant had failed to report for his assigned shift

---

[2] The letter was incorrectly dated April 15, 2012. *Id*. at 95.

since November 1, 2012, and had not been granted approval for his absences. *Id*. at 4. Under the second charge, the notice stated that the appellant had been on approved leave without pay (LWOP) from October 1 through October 31, 2012, that he had been instructed on multiple occasions to submit medical documentation in order to receive additional LWOP beyond that time, and that he had failed to do so. *Id*. at 5. The proposal also noted that on January 24, 2013, an Acting Special Investigative Agent (SIA) contacted the appellant at his personal email address to inform him that he was the subject of an investigation, and that he had failed to respond to her request for a statement. *Id*. at 4-5; *see id*. at 7.

¶6        At the request of the parties, the administrative judge dismissed the appellant's demotion appeal without prejudice, pending the outcome of the proposed removal. 0092-I-1, IAF, Tab 15. Meanwhile, the appellant responded to the proposed removal through his attorney. 0265-I-1, IAF, Tab 1 at 27-30. On March 25, 2013, the Complex Warden issued a letter informing the appellant of his decision to remove him effective April 3, 2013. 0265-I-1, IAF, Tab 1 at 55-58.

¶7        Shortly thereafter, on April 9, 2013, OSC terminated its inquiry into the appellant's complaint and informed him of his right to seek corrective action from the Board. 0329-W-1, IAF, Tab 1 at 97-98. On April 26, 2013, the appellant filed an appeal of his removal and refiled his demotion appeal. 0265-I-1, IAF, Tab 1; MSPB Docket No. DE-0752-13-0092-I-2 (0092-I-2), IAF, Tab 1.[3] Subsequently, on June 13, 2013, the appellant filed an IRA appeal challenging his June 26, 2012 reassignment. 0329-W-1, IAF, Tab 1. On July 1, 2013, the administrative judge issued an order joining the demotion, removal, and IRA appeals. 0092-I-2, IAF, Tab 11. The joined appeal was dismissed without

---

[3] The appellant initially contended that his removal was due in part to retaliation for filing his demotion appeal, *see* 0092-I-2, IAF, Tab 1, but he did not further pursue that claim.

prejudice on July 18, 2013, and automatically refiled on August 29, 2013. 0092-I-2, IAF, Tab 14; MSPB Docket No. DE-0752-13-0092-I-3 (0092-I-3), IAF, Tab 1.[4] A hearing was conducted on December 5 and 6, 2013. Hearing Compact Diskettes (HCDs) 1-2. On February 14, 2014, the administrative judge issued an initial decision sustaining the demotion and removal actions. 0092-I-3, IAF, Tab 17, Initial Decision (ID). The administrative judge summarily found jurisdiction over the IRA appeal, *see* ID at 2 n.2, and denied the appellant's request for corrective action.

¶8    On petition for review, the appellant argues that the administrative judge erred in crediting the testimony of the Warden in connection with his whistleblowing and discrimination claims. Petition for Review (PFR) File, Tab 1 at 8-9. Concerning the whistleblowing retaliation claim, the appellant contends that the administrative judge erred in finding that the responsible agency officials did not know of his protected disclosures. *Id*. He further argues that the administrative judge misstated the pertinent case law on discrimination, and that, contrary to his analysis, "proving an employer's legitimate business reason to be false is enough to support a finding of discrimination." *Id*. at 12. Regarding the merits of the removal action, the appellant contests the administrative judge's finding that he failed to timely submit medical documentation in support of his LWOP requests. *Id*. The appellant also contends that his alleged failure to respond to the email from the Acting SIA constitutes a separate charge, that he did attempt to respond to her, and that because the charge fails, the removal must be reversed. *Id*. at 16-17. Finally, the appellant asserts that the administrative

---

[4] The agency had previously moved to indefinitely dismiss the IRA appeal pending possible reconsideration of the then-recent decision in *Day v. Department of Homeland Security*, 119 M.S.P.R. 589 (2013), in which the Board found that the portion of the Whistleblower Protection Enhancement Act (WPEA) clarifying the definition of a "disclosure" applied to pending Board cases. The administrative judge denied the motion, agreeing with the appellant that the new provisions of the WPEA had no effect as to whether his disclosures were protected. 0092-I-2, IAF, Tab 14.

judge failed to consider the *Douglas* factors in sustaining the demotion action. *Id*. at 17.

## ANALYSIS

<u>The charges underlying the demotion were correctly sustained.</u>

¶9 As noted above, the charge of Unauthorized Release of Information was based on 19 emails the appellant sent to his girlfriend, containing sensitive information including the legal status of certain named inmates, photographs of inmates who had been injured in fights, a local investigation packet, an arbitration witness list for an upcoming hearing, and an authorization to conduct an investigation into an allegation of sexual harassment. 0092-I-1, IAF, Tab 5 at 24-27. Under the charge of Unprofessional Conduct, the proposal notice listed two instances in which the appellant sent his girlfriend emails from his work address containing profanity. *Id.* In a March 6, 2012 affidavit, the appellant admitted to sending his girlfriend an arbitration witness list, inmate pictures and reports of incidents, reports regarding inmate investigations, and a grievance response. *See id*. at 232. He also admitted to sending his girlfriend an authorization to conduct a local investigation and predicating information, although he claimed to have done so accidentally. *Id.* Copies of the emails in question are contained in the record. *See id.*, parts 2-4.

¶10 On review, the appellant asserts that the administrative judge's analysis of the merits of the demotion action "is limited to exactly one sentence" and fails to address the *Douglas* factors. PFR File, Tab 1 at 17. The appellant appears to refer to a sentence in which the administrative judge stated his conclusion that the agency established the charges underlying the demotion action. *See* ID at 3. However, that finding concerned only the merits of the charge and was preceded by a detailed description of the pertinent record evidence. As discussed below, the administrative judge considered the reasonableness of the penalty and thoroughly addressed the *Douglas* factors elsewhere in the decision. ID at 17-18.

The charges underlying the removal were correctly sustained.

¶11    To prove a charge of AWOL, the agency must show that the employee was absent, and that his absence was not authorized or that his request for leave was properly denied. *Wesley v. U.S. Postal Service*, 94 M.S.P.R. 277, ¶ 14 (2003). Here, it is undisputed that the appellant was absent from work from November 1, 2012, through February 5, 2013, the date of the proposed removal, and that the agency had denied his requests for LWOP to cover his absences during that period. We therefore proceed to the question of whether the agency properly denied his requests for LWOP.

¶12    With exceptions not applicable here, the authorization of LWOP is at the discretion of the agency. *Sambrano v. Department of Defense*, 116 M.S.P.R. 449, ¶ 4 (2011).[5] However, in cases involving medical excuses, the Board will examine the record as a whole to determine whether the agency's denial of LWOP to an employee charged with AWOL was reasonable under the circumstances. *Id.* Here, the agency denied the appellant's request for LWOP based on his alleged failure to provide the medical documentation needed to support his request. While AWOL and Failure to Follow Leave Procedures are typically considered as distinct charges with different elements, in this case they are based on the same conduct, and we therefore consider them as a single charge. *See Valenzuela v. Department of the Army*, 107 M.S.P.R. 549, 553 n.* (2007); *Jones v. Department of Justice*, 98 M.S.P.R. 86, ¶ 16 (2004) (merging the charge of AWOL into the charge of failure to follow instructions, where both charges were based on the same underlying facts, i.e., the appellant's failure to follow instructions by

---

[5] Department of Justice Order 1630.1B, *Leave Administration*, provides that granting of LWOP is mandated for disabled veterans who are entitled to LWOP if needed to undergo medical examination or treatment of the disability, and reservists or National Guardsmen who are entitled to LWOP if needed for military training. 0092-I-3, IAF, Tab 9 at 119; *cf. Sambrano*, 116 M.S.P.R. 449, ¶ 6 n.2 (noting similar provisions of Department of Defense policy).

refusing to provide the necessary medical documentation to substantiate his alleged inability to work).

¶13     In determining whether the denial of LWOP was reasonable, the Board will consider whether the denial was consistent with agency policy. *See Sambrano*, 116 M.S.P.R. 449, ¶ 6. Department of Justice Order 1630.1B, *Leave Administration*, provides that, "[e]ven where an employee has a legitimate need for requesting LWOP, e.g., sickness, injury, or personal emergency, the request may be denied if the employee's services are required or the employee has not followed prescribed leave procedures." 0092-I-3, IAF, Tab 6 at 119. Agency policy further provides that an employee requesting extended LWOP beyond 30 days for medical reasons "must submit a medical certificate or other administratively acceptable evidence substantiating the reason(s) for the absence." *Id*. For the reasons discussed below, we find that the appellant failed to submit such evidence, and that the denial of LWOP that resulted in his AWOL charge was therefore reasonable.

¶14     The record reflects the following sequence of events. In July 2012, the appellant applied for leave under the Family Medical Leave Act, and provided medical documentation from his psychiatrist who indicated that he would be unable to work for at least 2 months. 0265-I-1, IAF, Tab 1 at 34-37. The appellant also requested a disability retirement application, and he was assigned to a Benefits Specialist in the agency's Benefits Section in Grand Prairie, Texas. *See id*. at 42. The appellant retained the Harris Law Firm for assistance in filing his disability retirement claim. *Id*. at 44.

¶15     In a letter dated September 11, 2012, the appellant's psychiatrist informed a Human Resources (HR) Manager that the appellant had suffered what he believed to be side effects to his medication, and that he should remain on medical leave until the issue was resolved. *Id*. at 38. Although the appellant continued to work with the Harris Law Firm in connection with his disability retirement application, he retained his current representative, Kirby Smith, Esquire, of the Vaughan Law

Firm, to assist him in requesting additional leave. *See id*. at 39-41. In an email to the HR Manager, dated September 20, 2012, attorney Smith explained that the appellant's disability retirement application was still being compiled. He requested that the agency stay any potential personnel actions and place the appellant on LWOP pending the results of his application, which attorney Smith estimated might take another 6 months to process. *Id*. at 39-41.

¶16        By email dated October 10, 2012, an Assistant HR Manager informed attorney Smith that the appellant had been approved for 30 days of LWOP beginning October 1, 2012. *See* 0265-I-1, IAF, Tab 1 at 42. The Assistant HR Manager also stated that HR had learned from the Benefits Section that the appellant had not returned any information to support his disability retirement application and explained that if the appellant required additional LWOP, "he should submit another request to the Warden, through our offices, with updated medical documentation to support his request for leave." *Id*.; *see id.* at 8 (Assistant HR Manager's affidavit).

¶17        On November 1, 2012, following the expiration of the approved LWOP, the Assistant HR Manager notified the appellant by email that HR had not received his updated medical documentation, and that he would therefore be placed in AWOL status. *Id*. at 9 (Assistant HR Manager's affidavit). She also indicated that the appellant had not yet completed his disability retirement application with the Benefits Section. *Id*. After receiving the Assistant HR Manager's email, the appellant spoke with a legal assistant with the Harris Law Firm, who informed him that his application had yet to be submitted because she was still waiting for additional medical documentation. *See* 0092-I-3, IAF, Tab 9 at 154. The appellant notified attorney Smith of his conversation with the Harris legal assistant, stating that she "doesn't understand the AWOL status and neither do I." *Id*. Smith forwarded the appellant's message to the Assistant HR Manager, asking her to "[p]lease inform me of anything further you would need from [the appellant] to keep him in [LWOP] status." *Id*.

¶18      The Assistant HR Manager responded the same day, stating as follows:

> In the e-mail sent October 10, 2012 … it was indicated if Mr. Brown requires additional LWOP beyond the October 31, 2012 date approved by the Warden, he must submit updated medical documentation through our office to the Warden. To date, we have not received any documentation, nor a written request to continue the LWOP.

> Additionally, our offices submitted all necessary documents (Agency Statement) regarding Mr. Brown's Application for Disability Retirement in July, 2012. The application is not considered filed until Mr. Brown submits all required documents to his Benefits Specialist. Therefore, we have no confirmation Mr. Brown intends to actually file. Until his complete application is received by his Benefits Specialist, we cannot assume he is attempting to retire.

> Per the attached message, if Mr. Brown would like LWOP, he must submit a written request with current supporting documentation to substantiate his request.

*Id*. at 153; *see* 0265-I-1, IAF, Tab 1 at 9 (Assistant HR Manager's affidavit).

¶19      At some point thereafter, the legal assistant notified the appellant that, although she was still awaiting additional medical documentation, his application, including records from his psychiatrist and another provider, would be submitted "as-is" by November 13, 2012. 0265-I-1, IAF, Tab 1 at 46-47. In that same message, she further advised the appellant that the Harris Law Firm was representing him only concerning his disability retirement claim, and was unable to help him with the AWOL issue. *Id*. at 47. She offered to contact the HR Manager and the Benefits Specialist and inform them of the status of his application. *Id*.

¶20      Subsequently, on November 9, 2012, the appellant emailed the HR Manager and requested that his AWOL be converted to LWOP status retroactive to November 1, 2012. 0265-I-1, IAF, Tab 1 at 46. He asserted that, contrary to what the Assistant HR Manager had implied, he did intend to file a disability retirement application, and he provided a copy of the undated message from the legal assistant. *Id*. He, however, did not submit medical documentation with his

request.  In an email dated November 12, 2014, apparently sent to the HR Manager, the legal assistant indicated that the disability application had been sent to the Benefits Section office that day.  *Id*. at 48.  She offered to assist with obtaining additional documentation or with any general questions or concerns. *Id*.  The HR Manager was out of the office at the time.  *Id*. at 51-52.

¶21      On November 14, 2014, the Assistant HR Manager emailed attorney Smith, informing him that the appellant still had not submitted updated medical documentation to support his request for additional LWOP, that HR had received correspondence from the Harris Law Firm indicating that the appellant's disability retirement application had been forwarded to the Benefits Section, and that as of that morning the application had not yet been received.  0092-I-3, IAF, Tab 9 at 162; 0265-I-1, IAF, Tab 1 at 9 (Assistant HR Manager's affidavit).  She further stated:  "Mr. Brown's disability retirement application and his status for time and attendance purposes are two different issues.  If Mr. Brown would like to be considered for LWOP, he must submit updated medical information to the Warden through our offices.  This requirement was addressed previously." 0092-I-3, IAF, Tab 9 at 162.  That afternoon, Smith responded, stating: "I have contacted Mr. Brown about the issue.  As we do not represent him regarding disability retirement, we do not have access to his medical records or any updates on his condition.  He has another firm representing him regarding disability retirement and I informed Mr. Brown that this message is better directed to them."  *Id*. at 158.

¶22      On November 15, 2012, the Assistant HR Manager forwarded Smith's message to the appellant and the Harris Law Firm.  *Id*. at 155.  By email dated November 16, 2012, the Benefits Specialist notified the legal assistant that he had received the appellant's disability application.  0265-I-1, IAF, Tab 1 at 53.  The Assistant HR Manager was copied on the email.  *Id*. at 53.  In her January 24, 2013 affidavit, the HR Manager stated that she again contacted the appellant on November 29, 2012, "to inform him what he needed to do."  *Id*. at 11 (HR

Manager's affidavit).  She further stated that the HR office was "expecting supporting documentation to support an additional [LWOP] period," and that, as of the date of her affidavit, the appellant had not provided any documentation. *Id*.

¶23    The appellant contends he had a good faith belief that his local HR office would be able to contact the Benefits Office and obtain a copy of his disability retirement application, which included the medical documentation to support his need for LWOP.  He notes that HR had previously done so concerning the status of his application.  However, the Assistant HR Manager testified at the hearing that the Benefits Office was not authorized to share with HR the information contained in the disability application.  HCD1 (Assistant HR Manager). Moreover, in her emails of October 10, November 1, and November 14, 2012, she explicitly instructed the appellant and his attorney that medical documentation in support of the LWOP request should be submitted to the Warden through her office.  Hence, even if HR had been able to obtain medical documentation from the Benefits Office, the appellant was on clear notice that it was his responsibility to ensure that HR received the necessary documentation.

¶24    The appellant further argues that, because the Harris Law Firm was assisting him with his disability retirement application, it "became the natural point of contact" regarding his medical condition.  PFR File, Tab 1 at 14. However, as the legal assistant informed the appellant, the Harris Law Firm was not representing the appellant in his LWOP request and could not assist him in that matter.  There is no apparent reason why the appellant or his attorney could not have obtained copies of the medical records from the Harris Law Firm and submitted them to HR as instructed.  Smith expressly declined to perform that task, instead suggesting that HR contact the Harris Law Firm directly.  In short, it appears that each firm expected the other to provide HR with the documentation it needed to support the appellant's LWOP request.  While the failure of coordination had unfortunate consequences for the appellant, he is ultimately

responsible for the errors of his chosen representatives. *Sofio v. Internal Revenue Service*, 7 M.S.P.R. 667, 670 (1981). Because the appellant failed to provide HR with the medical documentation needed to support his request for continued LWOP, despite having been advised of the need to submit such documentation and having been provided several opportunities to do so, we find the denial of LWOP was consistent with agency policy.

¶25        Moreover, even if the appellant had provided the requested documentation, we still would find that the denial of LWOP that led to his placement on AWOL was not unreasonable. The Board has held that, where an employee who is incapacitated for duty has exhausted his or her leave, it is not improper for an agency to deny LWOP where there is no foreseeable end to the employee's absence and the employee's absence is a burden to the agency. *Bologna v. Department of Defense*, 73 M.S.P.R. 110, 113, *aff'd*, 135 F.3d 774 (Fed. Cir. 1997) (Table). Under such circumstances, denial of LWOP is reasonable even in the face of medical evidence showing that the employee is unable to work. *Young v. Department of Veterans Affairs*, 83 M.S.P.R. 187, ¶ 12 (1999). Here, the appellant gave the agency no reason to believe that there was a foreseeable end to his absence, and he does not dispute that his failure to report for assigned shifts created "a significant burden on [his] fellow staff and severely limit[ed] the institution's ability to meet its mission." 0092-I-2, IAF, Tab 3 at 14, 17; *see Bologna*, 73 M.S.P.R. at 115.

¶26        We find no merit to the appellant's contention that the agency intended to charge him separately with his alleged failure to respond to the Acting SIA's email. Accordingly, we do not make a finding as to whether the appellant attempted to contact her. We further note that the appellant is mistaken in his belief that reversal of a single charge would necessitate reversal of the removal action. *See Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 308 (1981) (when not all of the charges are sustained, the Board will consider carefully whether the sustained charges merit the penalty imposed by the agency).

The appellant did not establish his discrimination claim.

¶27    The appellant alleges that his demotion and removal were the result of discrimination based on race and color, i.e., light-skinned African-American. Typically, in order to establish a claim of prohibited employment discrimination under Title VII based on circumstantial evidence, an employee must first establish a prima facie case; the burden of going forward then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its action; and, finally, the employee must show that the agency's stated reason is merely a pretext for prohibited discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). To establish a prima face case, the employee must show that: (1) he is a member of a protected class; (2) he suffered an employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007).

¶28    Here, as in most cases under chapter 75, the agency has already articulated a legitimate, nondiscriminatory reason for its action, i.e., the charged misconduct. *See Marshall v. Department of Veterans Affairs*, 111 M.S.P.R. 5, ¶ 16 (2008). Contrary to the appellant's assertions on petition for review, it is unnecessary for the agency to actually prove its charges in order to meet its burden under the *McDonnell Douglas* framework. Rather, the agency meets its burden of articulating a legitimate, nondiscriminatory reason for an alleged discriminatory action when it introduces evidence "which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Carter v. Small Business Administration*, 61 M.S.P.R. 656, 666 (1994) (quoting *St. Mary's Honor Center v. Hicks*, 508 U.S. 502, 509 (1993); *cf. Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 36 (2014) (finding that the agency had articulated a nondiscriminatory reason for its action, although only one of two charges was proven).

¶29    Having met that burden, the agency has done everything that would be required of it if the appellant had made out a prima face case.

*Marshall*, 111 M.S.P.R. 5, ¶ 16. Accordingly, the inquiry proceeds to the ultimate question of whether, upon weighing all the evidence, the appellant has met his burden of proving that the agency intentionally discriminated against him. The evidence to be considered at this stage may include: (1) the elements of the prima facie case; (2) any evidence the employee presents to attack the employer's proffered explanations for its actions; and (3) any further evidence of discrimination that may be available to the employee, such as independent evidence of discriminatory statements or attitudes on the part of the employer, or any contrary evidence that may be available to the employer, such as a strong track record in equal opportunity employment. *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc). If we disbelieve the agency's proffered reason, especially if we find it to be mendacious, our rejection of that reason, in combination with the elements of the prima facie case, *permits* a finding of intentional discrimination. *Hicks*, 508 U.S. at 511. However, the appellant is mistaken in his belief that disproving the agency's proffered reason would *require* a finding of discrimination. As the Court clearly stated in *Hicks*, "[t]hat the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the [employee's] proffered reason of [discrimination] is correct." *Id*.

¶30 In support of his discrimination claim, the appellant testified that in a meeting with the Warden, the Assistant Warden made comments to the effect that the appellant had "pretty green eyes" and nice hair and lips, and that his mother must have had pretty lips. HCD1 (appellant). He further alleged that the Assistant Warden called him a "mixie," referring to his biracial background. *Id*. A subordinate of the Assistant Warden testified that he also heard the Assistant Warden make such comments in that meeting, which occurred in 2009 or 2010, and that it made him uncomfortable, but that the appellant merely said that "it was what it was." HCD1 (subordinate employee). For his part, the Assistant Warden denied making such statements, and further testified that he had never

heard the term "mixie" and did not know what it meant. HCD2 (Assistant Warden). The Warden, who also was present at the meeting, testified that he never heard the Assistant Warden make such comments or any unprofessional remarks about the appellant or anyone else. HCD1 (Warden).

¶31 On review, the appellant argues that the administrative judge erred in crediting the testimony of the Warden that he had not heard the Assistant Warden make the discriminatory remarks. PFR File, Tab 1 at 8-9. He notes that the Warden's testimony was contrary to his own and that of the subordinate employee, and further contends that the Warden displayed a religious bias by citing his Christian beliefs as a reason to consider the Assistant Warden as trustworthy. *Id*. However, assuming arguendo that the administrative judge should have discredited the Warden's testimony, the error provides no basis for reversal, because the administrative judge did not make a finding as to whether the Assistant Warden made the statements in question. The administrative judge rather found that, even if the Assistant Warden had made the statements, and those statements were discriminatory, they were nonetheless insufficient to establish that the adverse actions on appeal were based on the appellant's race and color. ID at 11. In so finding, the administrative judge correctly noted the absence of any evidence that these sentiments were shared by the Complex Warden or either of the proposing officials, or by the Warden, who had no involvement in the adverse actions in any case. We agree with the administrative judge that, regardless of whether the Assistant Warden made the inappropriate remarks, the appellant failed to establish by preponderant evidence his discrimination claim.

The appellant did not establish his affirmative defense of whistleblowing reprisal.

¶32 Regarding the appellant's adverse action appeals, we treat his claim of whistleblowing reprisal as an affirmative defense. *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 21 (2014). To establish an affirmative defense of whistleblowing reprisal, the appellant must show by preponderant

evidence that he engaged in whistleblowing by making a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the agency's personnel action.[6]  *Shannon*, 121 M.S.P.R. 221, ¶ 21.

¶33    A protected disclosure is a disclosure of information that the appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.   5 U.S.C. § 2320(b)(8)(A); *Chambers v. Department of the Interior*, 515 F.3d 1362, 1367 (Fed. Cir. 2008). To prove that a disclosure is protected, the appellant must show that a disinterested observer with knowledge of the essential facts known to and readily ascertainable by him could reasonably conclude that:  (1) the alleged misconduct occurred; and (2) the alleged misconduct evidences one of the categories of wrongdoing identified in 5 U.S.C. § 2302(b)(8)(A).

¶34    Here, the administrative judge found that both of the appellant's alleged disclosures were protected, but he did not elaborate on that finding or indicate which types of wrongdoing were implicated in those disclosures.  ID at 16.  It was error to omit the necessary analysis.  *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests). Nonetheless, we discern no error in the administrative judge's ultimate conclusion that the disclosures were protected.

¶35    Concerning the appellant's first alleged disclosure, while the agency does not dispute that the taunting incident took place, there is a dispute as to whether the appellant in fact disclosed the incident to the Warden.  The appellant

---

[6] The administrative judge erroneously set forth the standard appropriate to retaliation claims under § 2302(b)(9).  *See* ID at 11 (citing *Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986)).

testified that the Captain notified him of a report of the incident, that he then watched the videotape of the confrontation between the prison guard and the Muslim inmates, and that the Captain suggested that they report it to the Warden. The appellant related that, after the Warden learned that the guard was a friend of the union vice-president, he indicated that he was "going to let the Union have this one," and not pursue the matter further. The appellant explained that when he protested, the Warden got angry and told him to get out of his office. HCD1 (appellant); *see* 0392-W-1, IAF, Tab 1 at 90. However, both the Warden and the Captain testified that they did not recall the meeting at which the disclosure allegedly took place. ID at 14; *see* HCD1 (Warden, Captain).

¶36    We agree with the appellant that the administrative judge should have applied the factors set forth in *Hillen v. Department of the Army*, 35 M.S.P.R. 453 (1987), and made an explicit credibility determination. *See id.* at 458 (to resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible); *Spithaler*, 1 M.S.P.R. at 589. However, in finding that the first disclosure was protected, the administrative judge implicitly credited the testimony of the appellant over that of the Warden and the Captain. Consequently, the appellant was not prejudiced by the administrative judge's failure to conduct an explicit *Hillen* analysis. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).

¶37    We further find that the appellant reasonably believed both disclosures evidenced an abuse of power. The Board has defined "abuse of authority" as an arbitrary or capricious exercise of power by a federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons. *D'Elia v. Department of the Treasury*, 60 M.S.P.R. 226, 232-33 (1993), *overruled on other grounds by Thomas v. Department of the Treasury*, 77 M.S.P.R. 224 (1998). A reasonable

person could well conclude that the prison guard abused his authority by taunting inmates about their religious preferences. *Cf. Herman v. Department of Justice*, 115 M.S.P.R. 386, ¶ 11 (2011) (harassment of other employees may constitute an abuse of authority). Likewise, the appellant's undisputed allegation that the Associate Warden gave a subordinate employee preferential treatment based on his having a sexual relationship with her, clearly falls within the definition of abuse of authority. *See Sirgo v. Department of Justice*, 66 M.S.P.R. 261, 267 (1995).

¶38 The next question to be decided is whether the appellant established by preponderant evidence that the disclosures were a contributing factor in his demotion and/or removal. The most common way of proving that a disclosure was a contributing factor is the "knowledge/timing" test. *Shannon*, 121 M.S.P.R. 221, ¶ 23 (2014); *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 12, *aff'd*, 353 F. App'x 435 (Fed. Cir. 2009). Under that test, an appellant can prove the contributing factor element through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id*.

¶39 The appellant has not alleged that the Deputy Captain, the Associate Warden, or the Complex Warden were aware of his first disclosure, and again, there is no evidence that the Warden played any role in either the demotion or removal actions. As for the second disclosure, there is a dispute as to whether management was aware that the appellant was the author of the anonymous letter. The Deputy Captain, an appellant witness, testified that he had not heard anyone in management identify the appellant as the author of the letter, and that he did not know what management had done with the letter or if they had tried to find out who wrote it. HCD1 (Deputy Captain). The Warden testified that he did not remember seeing the letter and that he had already learned about the allegations against the Associate Warden in February 2012. HCD1 (Warden).

The Complex Warden, the deciding official in both cases, testified that he was aware of the anonymous letter, but that an investigation into the allegations against the Associate Warden was already underway, and he was never aware that the appellant had written the letter. HCD (Complex Warden). The appellant contends that it "flies in the face of reason" that the agency would fail to determine the author of the letter "simply because an investigation into similar claims was already ongoing," and that neither the Complex Warden nor the Warden "provided any compelling testimony as to why the Agency would *not* investigate the anonymous letter . . . ." PFR File, Tab 1 at 11 (emphasis in original). However, we find that it is not implausible that management would decline to spend time and energy investigating the authorship of the letter, and the appellant's speculation to the contrary does not amount to preponderant evidence that the agency officials knew of his disclosure.

¶40    Although the administrative judge confined his analysis to the knowledge/timing test, we note that the knowledge/timing test is not the only way for an appellant to establish the contributing factor element. *Daniels v. Department of Veterans Affairs*, [105 M.S.P.R. 248](), ¶ 16 (2007). Where, as here, the appellant fails to satisfy the knowledge/timing test, the Board will consider other evidence, such as that pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether whistleblowing was personally directed at the proposing or deciding officials, and whether those individuals had a desire or motive to retaliate against the appellant. *Stiles v. Department of Homeland Security*, [116 M.S.P.R. 263](), ¶ 24 (2011). In this case, the agency's charges were proven, the whistleblowing was not personally directed at the proposing or deciding officials, and the appellant has provided no evidence that those officials had a desire or motive to retaliate against him. Accordingly, we conclude that the appellant has not shown that his disclosures were a contributing factor in his demotion or removal, and that his affirmative defense of whistleblowing reprisal therefore fails.

The demotion and removal penalties are reasonable for the sustained misconduct.

¶41        As it is undisputed that the sustained misconduct bears a nexus to the efficiency of the service, we proceed to the question of whether the penalty was reasonable.  Where, as here, all of the agency's charges have been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness.  *Davis v. U.S. Postal Service*, 120 M.S.P.R. 457, ¶ 6 (2013); *Douglas*, 5 M.S.P.R. at 306.  In determining whether the selected penalty is reasonable, the Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency.  *Davis*, 120 M.S.P.R. 457, ¶ 6.  The Board recognizes that its function is not to displace management's responsibility or to decide what penalty it would impose but to assure that management's judgment has been properly exercised and that the penalty selected does not exceed the maximum limits of reasonableness.  *Id*.  Thus, the Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty imposed clearly exceeded the bounds of reasonableness.  *Id*.  However, if the deciding official failed to appropriately consider the relevant factors, the Board need not defer to the agency's penalty determination.  *Id*.

¶42        The Board has articulated factors to be considered in determining the propriety of a penalty, such as the nature and seriousness of the offense, the employee's past disciplinary record, the employee's potential for rehabilitation, the supervisor's confidence in the employee's ability to perform his assigned duties, and the consistency of the penalty with those imposed on other employees for the same or similar offenses.  *Douglas*, 5 M.S.P.R. at 305-06.  Not all of the *Douglas* factors will be pertinent in every instance, and so the relevant factors must be balanced in each case to arrive at the appropriate penalty.  *Davis*, 120 M.S.P.R. 457, ¶ 7; *Douglas*, 5 M.S.P.R. at 306.  The seriousness of the offense is always one of the most important factors in assessing the

reasonableness of an agency's penalty determination. *Davis*, 120 M.S.P.R. 457, ¶ 7; *Schoemer v. Department of the Army*, 81 M.S.P.R. 363, ¶ 12 (1999).

¶43    Regarding the demotion action, the deciding official explained that disclosing sensitive information to unauthorized persons, especially information pertaining to inmate and staff investigations, is a serious offense given that release of such information could potentially affect the integrity of those investigations and jeopardize the safe and orderly running of the Florence U.S. Penitentiary.  0092-I-1, IAF, Tab 5 at 14-15.  He further explained that this is especially true in light of the appellant's position as a supervisory Special Investigative Agent, in which he is entrusted with sensitive information and given the responsibility of ensuring the integrity of investigations completed by his office. *Id*.  The deciding official noted that the appellant had 14 years of service with no prior discipline, and that his performance had been above an acceptable level, but found that his conduct demonstrated poor judgment that caused him to lose faith in his ability to perform his duties effectively and professionally. *Id*.

¶44    The appellant observes that his girlfriend received only a short suspension for her role in the same email exchanges for which he was demoted.  In *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640 (2012), the Board clarified the criteria necessary for showing disparate penalties.  Specifically, the Board held that an appellant must show that there is "enough similarity between both the nature of the misconduct and the other factors to lead a reasonable person to conclude that the agency treated similarly-situated employees differently, but the Board will not have hard and fast rules regarding the 'outcome determinative' nature of those factors." *Id*., ¶ 20 (quoting *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 15 (2010)).  The agency's burden to prove a legitimate reason for the difference in treatment between employees is triggered by the appellant's initial showing that there is enough similarity between both the nature of the conduct and the other factors to lead a reasonable person to conclude that the agency treated similarly-situated employees differently."

*Boucher*, 118 M.S.P.R. 640, ¶ 24. As the administrative judge correctly noted, the appellant's girlfriend worked at a different institution, reported to a different manager, and received her discipline from a different deciding official. Moreover, her position as a Unit Manager did not involve the same level of exposure to or responsibility over sensitive information as did the appellant's Special Investigative Agent position. We agree with the administrative judge that, given these significant differences, the girlfriend is not a comparable employee for purposes of establishing a disparate penalties claim.

¶45    Regarding the removal action, the Board has held that AWOL is a serious offense warranting a severe penalty. *Young v. U.S. Postal Service*, 79 M.S.P.R. 25, 39 (1998). Moreover, following agency leave-requesting procedures is an essential part of a government job as the failure to do so results in unscheduled absences, which seriously burden an agency and are disruptive to its efficient operations. *Stevens v. Department of the Army*, 73 M.S.P.R. 619, 625 (1997). The record reflects that the deciding official considered potential mitigating factors, including the appellant's performance and length of service, but found that these factors were not sufficient to outweigh the factors supporting the removal penalty. 0265-I-1, IAF, Tab 1 at 56. Given the appellant's being AWOL for more than 60 days and his failure to provide the medical documentation needed to support his request for extended LWOP, we agree that the penalty of removal was within the bounds of reasonableness. *See McCauley v. Department of the Interior*, 116 M.S.P.R. 484 (2011) (penalty of removal for more than 20 consecutive days of AWOL did not exceed the tolerable limits of reasonableness).

The appellant established jurisdiction over his IRA appeal, but he is not entitled to corrective action.

¶46    Before proceeding to the merits of an IRA appeal, the Board must first resolve the threshold issue of jurisdiction. *See Schmittling v. Department of the Army*, 219 F.3d 1332, 1337 (Fed. Cir. 2000). Here, the administrative judge found that the Board had jurisdiction over the IRA appeal, but he did so without

providing any analysis to support that conclusion. ID at 2 n.1; *see Spithaler*, 1 M.S.P.R. at 589. Accordingly, we modify the initial decision to address the jurisdictional issue. *See Metzenbaum v. General Services Administration*, 96 M.S.P.R. 104, ¶ 15 (2004) (the Board must satisfy itself that it has the authority to adjudicate the matter before it and may raise the issue of its own jurisdiction sua sponte at any time).

¶47    The Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that: (1) he engaged in whistleblowing activity by making a protected disclosure, and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action. *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). Concerning the exhaustion requirement, the appellant alleged before OSC that his reassignment--which is the only personnel action at issue in this IRA appeal—was the result of his second disclosure. *See* 0092-I-3, IAF, Tab 11, Tab 17 at 12 n.5. Accordingly, for purposes of determining jurisdiction over the IRA appeal, we consider only whether the appellant nonfrivolously alleged that his second disclosure was both protected and a contributing factor in his reassignment. *See McCarthy v. International Boundary and Water Commission*, 116 M.S.P.R. 594, ¶ 34 (2011) (in an IRA appeal, the Board may consider only those charges of whistleblowing that were asserted before OSC, and may not consider any subsequent recharacterization of those charges before the Board), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012).

¶48    Because the appellant established by preponderant evidence that his second disclosure was protected, it follows that he made a nonfrivolous allegation that the disclosure was protected. The remaining jurisdictional question is whether he made a nonfrivolous allegation that the disclosure was a contributing factor in his June 26, 2012 reassignment. As discussed above, the appellant failed to show by preponderant evidence that the official responsible for his reassignment was

aware that he was the author of the anonymous letter, or was otherwise motivated to retaliate against him for that disclosure. However, this does not preclude a finding that, based on the written record, the appellant made a nonfrivolous allegation that the disclosure was a contributing factor in his reassignment. *Cf. Boechler v. Department of the Interior*, 109 M.S.P.R. 619, ¶ 17 (2008) (the appellant was not collaterally estopped from raising a protected disclosure raised in his previous IRA appeal; whereas the issue in the earlier appeal was whether, after a hearing, the appellant proved by preponderant evidence that the disclosure was protected, the issue in the second appeal was whether, on the written record, he made a nonfrivolous allegation that his disclosure was protected), *aff'd*, 328 F. App'x 660 (Fed. Cir. 2009). In his OSC complaint, the appellant alleged that his May 15, 2012 anonymous letter had been sent to "virtually every member of management at [U.S. Penitentiary] Florence" and stated that the Deputy Captain could confirm that "by June 26 or possibly earlier, management assumed [the appellant was] the author." 0329-W-1, IAF, Tab 1 at 95. While the Deputy Captain ultimately testified to the contrary, we find that, based solely on the written record, the appellant nonetheless made a nonfrivolous allegation that, by the time of the reassignment, the deciding official was aware of his anonymous disclosure, thus satisfying the knowledge/timing test. Accordingly, we conclude that the IRA appeal lies within the Board's jurisdiction.

¶49    Next, in reviewing the merits of an IRA appeal, the Board must examine whether the appellant proved by preponderant evidence that he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8), and that such whistleblowing activity was a contributing factor in an agency personnel action; if so, the Board must order corrective action unless the agency established by clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosures. *Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶ 18 (2010); *see* 5 U.S.C. § 1221(e). For the same reasons discussed above, we find that the appellant failed to

establish by preponderant evidence that his second disclosure was a contributing factor in his reassignment.[7] The administrative judge was therefore correct in denying the appellant's request for corrective action.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision. There are several options for further review set forth in the paragraphs below. You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

---

[7] We therefore do not reach the question of whether the agency established by clear and convincing evidence that it would have reassigned the appellant in the absence of the disclosure.  *See* 5 U.S.C. § 1221(e)(2); *Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014).

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Other Claims: Judicial Review

If you do not want to request review of this final decision concerning your discrimination claims, but you do want to request review of the Board's decision without regard to your discrimination claims, you may request review of this final decision on the other issues in your appeal by the United States Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court

has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the United States Court of Appeals for the Federal Circuit or by any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B)  (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board

neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                 William D. Spencer
                                 Clerk of the Board

Washington, D.C.